UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF WEST PALM BEACH,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS, UNITED STATES FISH AND WILDLIFE SERVICE, UNITED STATES DEPARTMENT OF THE INTERIOR, FEDERAL HIGHWAY ADMINISTRATION, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>Defendants. | No. 1:17-cv-01871 |

## MEMORANDUM OPINION

Before the court is Defendants' Motion to Transfer Venue and For Expedited Consideration Thereof. Upon consideration of the motion, the response and reply thereto, and for the following reasons, the court will GRANT Defendants' Motion to Transfer Venue and will order that this case be transferred to the United States District Court for the Southern District of Florida.

### I. BACKGROUND

In this action, Plaintiff City of West Palm Beach ("City") challenges the actions of four federal agencies—the United States Army Corps of Engineers, the United States Fish and Wildlife Service, the Federal Highway Administration, and the United States Environmental Protection Agency—as well as the United States Department of the Interior (collectively,

1

"Defendants") that resulted in the approval of an 8.5 mile extension of existing State Road 7 from Okeechobee Boulevard North to County Road 809A (Northlake Boulevard) in Palm Beach County, Florida. ECF No. 1 (Compl.) ¶¶ 1, 4. Plaintiff alleges that the extension of State Road 7 will pollute the Grassy Waters Preserve, which currently serves as the City's primary source of drinking water and as a home to "numerous species that have been designated as endangered or threatened." *Id.* ¶¶ 8, 57–59. Plaintiff further alleges that Defendants' "abdication of their responsibilities to consider the impacts of the discharge of nutrient laden stormwater into Grassy Waters Preserve" in approving the extension "violated the Clean Water Act, Endangered Species Act, and National Environmental Policy Act and is an arbitrary and capricious final agency action under the Administrative Procedure Act." *Id.* ¶ 8. Plaintiff seeks, *inter alia*, injunctive relief "setting aside" the agency permit and opinions that would permit construction on the road to proceed. *See id.* at 53.

On November 9, 2017, pursuant to 28 U.S.C. § 1404(a), Defendants filed a motion to transfer this case to the Southern District of Florida. ECF No. 7 (Defs. Mem.) at 1. Plaintiff opposes transfer, arguing that the court must afford substantial deference to Plaintiff's chosen forum, that the action has connections to the District of Columbia, and that the resolution of this action will impact citizens residing both inside and outside the Southern District of Florida. ECF No. 9 (Pl. Opp.) at 1–3.

## II. LEGAL STANDARD

A case may be transferred to another venue "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). District courts "retain broad discretion in balancing the asserted convenience and fairness to the parties." *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 3 (D.D.C. 2006) (citing *Sheraton Operating Corp. v. Just*

*Corp. Travel*, 984 F. Supp. 22, 25 (D.D.C. 1997)). The moving party "'bears the burden of establishing that transfer of the action is proper.'" *Smith v. Yeager*, 234 F. Supp. 3d 50, 55 (D.D.C. 2017) (quoting *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001)).

In deciding a motion to transfer venue under § 1404(a), a court must first determine whether the transferee district is one where the action "might have been brought," 28 U.S.C. § 1404(a), and then must balance the private and public interests involved in the proposed transfer to determine "whether the defendant has demonstrated that considerations of convenience and the interest of justice support a transfer." *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 178 (D.D.C. 2007). Here, Plaintiff concedes that "it could have brought its case in . . . the Southern District of Florida." Pl. Opp. at 7. Accordingly, the court focuses its analysis on the second step, which concerns the private and public interests involved in the proposed transfer.

### III. ANALYSIS

**A. Private Interest Factors**

Courts generally consider six private interest factors when deciding whether to transfer a case:

> 1) the plaintiff's choice of forum; 2) the defendant's choice of forum; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts; and 6) the ease of access to sources of proof.

*Sheffer v. Novartis Pharm. Corp.*, 873 F. Supp. 2d 371, 375 (D.D.C. 2012) (citations omitted).

Courts ordinarily give substantial deference to the plaintiff's choice of forum. *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 33 (D.D.C. 2008) (citing *Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 33 (D.D.C. 2004)). This deference is lessened when the plaintiff

3

does not choose its "home forum." *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) ("When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable.") (internal quotation marks and citation omitted). Moreover, "where there is an insubstantial factual nexus between the case and the plaintiff's chosen forum, deference to the plaintiff's choice of forum is . . . weakened." *Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 192 (D.D.C. 2012) (quotation marks and citation omitted).

In this case, Plaintiff's home forum is the Southern District of Florida, not the District of Columbia. Nonetheless, Plaintiff argues that its choice of forum is entitled to "at least some deference," Pl. Opp. at 18, and that venue is proper in the District of Columbia because "the defendants include agencies of the United States and officers and employees of the United States acting in their official capacities who reside in [the] district and a substantial part of the events or omissions giving rise to the claim occurred in [the] district." Compl. ¶ 10.

As an initial matter, the fact that the Defendants are located in the District of Columbia does not create a substantial factual nexus between Plaintiff's Complaint and the District of Columbia. *See Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25–26 (D.D.C. 2002) ("However, mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative."); *see also Niagara Pres., Coal., Inc. v. Fed. Energy Regulatory Com'n*, 956 F. Supp. 2d 99, 105 (D.D.C. 2013) ("A plaintiff seeking to sue federal defendants in this District must instead demonstrate substantial personalized involvement by a member of the Washington, D.C. agency in order for the court to conclude that there exist meaningful ties to the District.") (internal quotation marks and citation omitted).

4

Moreover, a "substantial part" of the events giving rise to Plaintiff's claims occurred outside of the District of Columbia. Plaintiff—the City of West Palm Beach—is located in the Southern District of Florida. All of the lands and natural resources at issue in this case—including the Grassy Waters Preserve and State Road 7—are located in the Southern District of Florida. Additionally, most of the challenged decisions were made outside of the District of Columbia. *See* Pl. Opp. at 15–16; Defs Mem. at 9. Indeed, Plaintiff only asserts generally that "recommendations," "decision[s]" and "review[s]" were conducted in Washington, D.C. Pl. Opp. at 15–16. Such general descriptions of the involvement of individuals in the District of Columbia are insufficient to create a substantial factual nexus between this case and the District of Columbia. *See, e.g.*, *Niagara Pres., Coal., Inc.*, 956 F. Supp. 2d at 105. Therefore, given the insubstantial nexus between this case and the District of Columbia, Plaintiff's choice of forum is not entitled to significant deference.

Second, the court considers Defendants' choice of forum. Defendants have proffered legitimate reasons for preferring the Southern District of Florida. Most notably, Plaintiff, a local governmental entity, is located in the Southern District of Florida, and the challenged extension project will occur in the Southern District of Florida. Because the factual allegations in this case have a close nexus to the Southern District of Florida, and Plaintiff has alleged minimal connection to the District of Columbia, the court finds that this factor favors transfer.

For many of the reasons previously articulated, the third factor—where the claims arose—also favors transfer. As noted above, the action that ultimately gave rise to Plaintiff's Complaint and that Plaintiff seeks to enjoin—the extension of State Road 7—is scheduled to take place in the Southern District of Florida. While some of the relevant policy decisions may have occurred outside of the Southern District of Florida, all of Plaintiff's claims stem from the

agencies' failure to adequately assess the harm to the Grassy Waters Preserve that could result from the extension of State Road 7.

The remaining private interest factors—convenience of the parties, convenience of the witnesses, and ease of access to sources of proof—do not weigh in favor of either venue. Although each Defendant and their counsel are headquartered in the District of Columbia, Defendants have indicated that they "are fully prepared to litigate this matter in the Southern District of Florida." Defs. Mem. at 10. Moreover, Plaintiff is located in the Southern District of Florida. Plaintiff argues that its legal representative resides in Washington, D.C., and would be inconvenienced if the case were transferred to the Southern District of Florida. *See* Pl. Opp. at 16. However, Plaintiff's counsel's location carries little weight in the court's analysis. *Holland v. A.T. Massey Coal*, 360 F. Supp. 2d 72, 77 (D.D.C. 2004) ("the location of counsel carries little, if any weight in analysis under § 1404(a)") (quoting *Armco Steel Co. v. CSX Corp.*, 790 F. Supp. 311, 324 (D.D.C. 1991)); *see also Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 69 (D.D.C. 2003) ("Because this action involves an administrative review that the court is likely to determine on the papers, the location of counsel—already given 'little, if any, weight' in transfer determinations—makes no difference here.") (quoting *Vencor Nursing Ctrs. v. Shalala*, 63 F. Supp. 2d 1, 6 n.4 (D.D.C. 1999)). Moreover, any weight given to the location of counsel is outweighed by the fact that Plaintiff's counsel is an attorney at Holland & Knight, LLP—a *Florida*-headquartered firm. *See* ECF No. 10 (Defs. Reply) at 10. Therefore, the convenience of the parties factor appears to be neutral with regard to either venue.

As to the convenience of the witnesses, the parties agree that the case will likely be decided based on administrative records and that witnesses may not be necessary. *See* Defs. Mem. at 10; Defs. Reply at 10; Pl. Opp. at 16. As to the last private interest factor—ease of

access to sources of proof—the relevant proof appears to be contained in administrative records, which Plaintiff does not argue would be difficult to provide in the Southern District of Florida.

**B. Public Interest Factors**

Having found that the private interest factors all either favor transfer or are neutral, the court now considers the public interest factors: "(1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Foote v. Chu,* 858 F. Supp. 2d 116, 123 (D.D.C. 2012) (citing *Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 56 (D.D.C. 2011)).

Regarding the first factor, Plaintiff argues that "[g]iven this Court's location in Washington, D.C. and the number of administrative cases that it handles, this Court is certainly as familiar, if not more so, with the governing law at issue." Pl. Opp. at 14. However, this case involves issues of federal law, and the United States District Court for the Southern District of Florida—a federal court—is "'presumptively competent to decide'" these issues. *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (quoting a commentary the Court found "persuasive"); *see also Def. of Wildlife v. Jewel*, 74 F. Supp. 3d 77, 86 (D.D.C. 2014) ("all federal courts should have the requisite familiarity with federal law") (citing *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d at 1175). With respect to the second factor—the relative congestion of the calendars in the two districts—Plaintiff acknowledges that both districts "have similar levels of congestion on their respective dockets." Pl. Opp. at 14. Therefore, the first two public interest factors are neutral, and neither favor nor disfavor transfer in this case.

Regarding the third public interest factor, Plaintiff argues that "the local interest in the Southern District of Florida is matched or exceeded by the national implications at stake and the numerous federal actions that led" to this action. *Id.* at 9. Specifically, Plaintiff argues that this case implicates the protection of an Aquatic Resource of National Importance ("ARNI") and endangered species—the protection of which are matters of national significance. *Id.* at 10–11. Plaintiff further argues that because the case concerns compliance with federal statutes, implicates significant expenditure of federal resources, and involves a wetlands ecosystem that supplies thousands of tourists and part-time residents with water and recreational activities, the case should remain in the District of Columbia. *Id.* at 11–14. The court disagrees.

The State Road 7 project is located exclusively within the Southern District of Florida. The individuals who will be most impacted by the outcome of this case are the residents of South Florida, and in particular, the residents of the City of West Palm Beach. While this case involves federal laws and could result in a decision with "national implications," these implications do not outweigh the significant interest of South Florida residents. *See Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 49 (D.D.C. 2006) ("While the fact that Plaintiffs' claims invoke federal law, relate to the Everglades ecosystem, and are brought by a national environmental organization suggests that the case has a national aspect . . . the extent and degree of Florida's interest is indisputable.") (internal quotation marks and internal citation omitted). As the Complaint details, the Grassy Waters Preserve—which Plaintiff alleges will be harmed through the construction of State Road 7—is a "23 square mile wetlands ecosystem that serves as the freshwater supply for over 130,000 residents of the City of West Palm Beach and the towns of Palm Beach and South Palm Beach." Compl. ¶ 4. Accordingly, while others—i.e., tourists or part-time residents—may eventually be affected by the outcome of this case, South Florida

residents will be immediately affected by any judicial ruling in this case. Thus, the controversy is clearly located in South Florida, and therefore should be addressed there. *See, e.g.*, *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 316 (D.D.C. 2015) ("The court agrees with Defendants that this case should be litigated within the 'view and reach' of the people who will be 'most vitally affected' by its outcome.").

Even assuming *arguendo* that the asserted national interests outweigh the local interests of citizens in the Southern District of Florida, Plaintiff has failed to articulate why these national interests could not be adequately addressed through litigation in the Southern District of Florida. As the D.C. Circuit has articulated, there is no "blanket rule that 'national policy' cases should be brought [in the District of Columbia]." *Starnes v. McGuire*, 512 F.2d 918, 928 (D.C. Cir. 1974). Courts in the Southern District of Florida can competently resolve the federal questions at issue and are equipped to address the variety of issues with national implications at stake in this case. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d at 1175 (quoting as "persuasive" commentary that noted that federal courts "are presumptively competent to decide" issues of federal law). Therefore, the court concludes that the third public interest factor favors transfer.

## IV.  CONCLUSION

After weighing the various factors applicable to a transfer motion, the court finds that the public and private interests either favor transfer or are neutral. Therefore, in its discretion, the court finds that the "consideration[s] of convenience and fairness" and "the interest of justice" in this case, particularly given the factual connection to the Southern District of Florida, weigh in favor of transfer to the Southern District of Florida under 28 U.S.C. § 1404(a). Accordingly, the court will GRANT Defendants' motion to transfer.

A corresponding order will issue separately.

Date:  June 28, 2018

_Tanya S. Chutkan_
TANYA S. CHUTKAN
United States District Judge